Good afternoon and welcome to the Ninth Circuit Court of Appeals. My name is Morgan Christen. I'm one of the judges on the circuit court. My chambers are in Anchorage, Alaska. It's much wider outside in Anchorage today than it is here. It almost looks springy. I'm joined this week by Judge Hurwitz, who's joining us from Phoenix. His chambers are there. And Judge Desai, who's here on the bench with me, whose chambers are also in Phoenix. I'll just start with a quick sound check. Judge Hurwitz, can you hear us okay? Yes, that was a yes. Okay, great. And counsel, you can both see Judge Hurwitz all right? Okay, perfect. Just a little housekeeping before we begin, please, because we've submitted three cases on the briefs, and we will not hear argument in those. They are 21-70340, Diego McGuell v. Bondi, 24-6380, Vega Lopez v. Bondi, and 24-7219, Taylor v. Bizignano. The first case on the oral argument calendar is 24-7646, Capullo v. United States of America. Counsel, we're ready for your argument when you are ready to present it. Good afternoon, judges. Good afternoon, counsel. May it please the court. My name is Doug Angel. I represent the appellant, John Capullo, who is in the courtroom with us today. I'm honored to be here today, a long-time listener, first-time caller. We're here on de novo . . . Do you watch our arguments on our channel? I do not. I guess long-time reader, I should say. Oh, reader. Okay. Well, that's good, too. We're here on de novo review, and the district court, to say that the district court does have subject matter jurisdiction, and therefore, we request that that judgment be reversed. This case presents a substantial legal issue, and that is, what is a reasonable limit on claim-splitting? That is, how may a claimant go about claim-splitting, settling a property claim by preserving the injury claim? Normally, this seems to me to be a pretty straightforward exercise because a form . . . I'm going to just call it a Form 95 is used, and we didn't have that with your first offer. Correct. And so, when you call it claim-splitting, I think that . . . I have the first question for both of you. I think there's no question about the offer, the terms of the offer that your client first presented. That all comes back to the government's response, right? Correct. Okay. So, could you go to that? So, our offer was, we will take $675 for the property damage, but we pointed out that the injury claim was forthcoming. And in the cases that have addressed this . . . I don't think there's any question about that, counsel. The question is . . . and then the government responded with something that they say is a release of all claims. Yes. Okay. Well, it said two things. One, the first paragraph of that letter they sent was, here's your property damage check to settle the property damage claim. The second paragraph says the 2672 language. And there is a case exactly like that, where a voucher was actually signed by the claimant and the pre-printed 2672 language was in the form. But above that, was printed a description of the property damage claim that was being settled. And so . . . What case do you contend is exactly like it? That was in a district case from Illinois called Robinson v. United States. Okay. So, let's . . . It's not binding on us. We've read it. Here's my question as a matter of contract law. Put 2672 aside for a second. As Judge Christin indicated, you offered to settle your personal . . . your property claim for a certain amount and said, but we don't want to settle our personal injury claim yet. The government responds with a letter that says, here's the money in settlement of your personal property claim. But if you cash this check, you have given up all claims. I don't think the second paragraph could be any clearer. And you cashed the check. 2672 aside, isn't . . . Why haven't you accepted their offer by cashing the check? In Oregon, the ORS 42.240 says particular terms or specific terms prevail over general terms. And the first paragraph of that letter . . . And I don't know if I'm looking in the right spot here by looking at him. Okay. I can see you. So, if the . . . So, the particular terms control over the general terms. And the first paragraph of the letter from the post office were the particular terms saying this is only for the damage. Even assuming Oregon law applies, which I'm not sure it does, but let's assume it does. You've got a letter that says you've made a claim for personal property damage. We're willing to pay you for that. But only if you . . . But if you accept this check, you've now given up all other claims too. It is perfectly clear to me what that letter says. You could have responded as the people in the third circuit case did that said, no, we're not going to give up our personal injury claims. But you signed the letter. So, the difference . . . So, whether or not we apply Oregon law or federal law or black letter contract law, I just don't see how you haven't given up the second claim by signing the check. So, tell me why not? Well, because in that Macy case from the third circuit, the claimant signed the form 95. And in that form, above their signature, it says, I agree to accept said amount in full satisfaction and final settlement of the claim. So, the Macy claimant . . . But isn't it true in the third circuit, they also reserved the personal . . . The plaintiff reserved in responding the personal injury claim. Correct. And that is . . . You didn't do that. You didn't do that. You did it before you got the counteroffer. So, please focus on this as a matter of contract law. I just don't understand why if somebody says to you, I'll pay off your property damage claim, but only if . . . But if you signed the check, you've given up all other claims, you haven't accepted that offer by signing the check. Yeah, it is our position that the particular terms of that post office letter control over the general terms of the 2672 language. So, that is the contract. So, because your contention is that Oregon law applies to the contract formation. Yeah, and the cases support that. I'll take yes for an answer. So, I think to just, if I could circle back to Judge Hurwitz's question.  It seems like your interpretation, because Judge Hurwitz is calling your attention to the two paragraphs we're talking about. Right. Right. And you started by saying the first paragraph is what we're settling, and your position is we only intend to settle the property damage. Judge Hurwitz has called your attention to the second paragraph, and he thinks that's a complete release. So, you have to be, I think, you have to be arguing that those have to be read together, those two paragraphs. They're actually two sentences, but have to be read together. They have to be read together, and you have to apply ORS 42.240. And Oregon law controls the formation of the contract. Of the settlement agreement. A different question about what controls the release. A contract. That's a contract. Well, no, there's a settlement, and then there's a release. Those are two different things. So, the contract formation had to do with, I mean, you know this, right? What the parties were agreeing to settle, and for how much. But the release is what Judge Hurwitz is calling your attention to. The release language. And so, why is he wrong when he says, hey, he thinks that this second paragraph, he said, couldn't be clearer. That all, because he's viewing this as a counteroffer, essentially. Yeah, and our position is that that's a contract. The release is a contract. The second paragraph? The letter together is the contract. The entire letter.  And so, the particular terms of the contract control over the general terms. And the post office limited the scope of the settlement by their own words. This has been done in other cases. Well, but to the extent those cases involve Form 95, I think they're easily distinguishable right off the top. Do you have a case that doesn't involve a Form 95? Ours. Yeah, okay. We haven't let Judge Desai get in a word edgewise, and I don't know if you have questions for this. Judge Hurwitz, did you get the answers to your questions? Well, I got responses, but I want to focus again on what law controls the terms of the release. It seems to me that, at least in the only opinion we have, which is the Schwarter case, we said that the interpretation of a 2672 settlement is a matter of federal law, not state law. And then we explained in great detail why, because we want to have a uniform system under 2672. So, why do you think Oregon law controls the interpretation of the release? The Schwarter case said that state law controls whether there's liability or not.  Right. And other district court cases from around the country have all agreed that the state law, the law of the place, controls the contract. Well, help me with that, because I've read all the cases you've cited. Some of them do cite state law, but they don't say federal law doesn't control, and they don't say federal law and state law would be different. So, I'm still focusing on the only time we've spoken about it, which says that we want a uniform national system. And if we were interpreting releases differently in every state, wouldn't that cut against what Schwarter was about? I think the Supreme Court has said, there was a case from the Ninth Circuit where there was an excessive force case, and the Supreme Court said, no, it's not a federal standard, it's a state standard. For the release or for the measuring the liability? Liability. Yeah. And so, no, I'm assuming that they're liable to you. Yeah. That's why you're fighting. I'm just trying to figure out how to interpret the release. Yes. And what our position is that the various cases, the district court cases from around the country that have dived into the details of it, recite that state law controls whether a contract has been formed. And a contract is a release and a settlement. So, without a contract, 2672 doesn't apply. To what extent, excuse me, to what extent are you relying on your argument that you didn't sign anything, that cashing the check wasn't enough? Can you repeat that again? Sorry. I think that, I may not be artfully paraphrasing, but I think your argument includes that you didn't sign anything by cashing the check, you didn't accept this if it were a counteroffer. Is that right? That's right. Yeah. And if we had, then we would have had to take the extra step, as in Macy, to say, no, no, I'm not done yet. I need to tell you that I have this personal injury claim. But we already had told the post office that we have a personal injury claim. Their letter to us says, yes, in fact, we're settling. And then they continue to chat with us. All right. I think we may be out of questions for the moment. Would you like to reserve your time? Yes. Thank you. You bet. Good afternoon. May it please the Court, Ben Hickman for the United States. Section 2672 says that any claim that is settled by the claimant bars any further claim arising out of the subject matter that led to that claim. Do you think it's impossible to split a claim? I'm sorry, Your Honor? Do you think it's impossible to split a Federal Tort Claims Act damages from property damage from personal injury, for example? Yes. So I've done that as a practitioner. I've had experience doing that back in the day when I was a lawyer. So just take another run at that question. If you think it's because of the statute, you think it's impossible to do this? Yes, because Section 2672 speaks directly to it. And I'll read directly from it. We've all read the statute. And I think you've answered my question. So do you think Macy is incorrectly decided? I'm sorry, Judge Hurwitz. Could you repeat that one more time? Do you think the Third Circuit case is incorrectly decided? I mean, I'm not sure why you need to take this position, but you've taken it. So let me explore it. The Third Circuit, the plaintiff said, I'll take your check and I'll cash it for the property claim. But I'm reserving my personal injury claim. And the Third Circuit said, you did it. You did reserve it. So the Third Circuit must think you're wrong, correct? Yes, I think that, well, of course... Is there a good reason for us to create a split with the Third Circuit in this case? I think there is. And I think what happened... That's your best argument? No, no. Your best argument is we should create a split with the Third Circuit? Well, of course, there is just the factual distinction, which is that... Yes, there is a small factual distinction. So I'm not sure what you're leading with. So... We're not trying to give you a hard time, but we do have to understand the argument. And it does strike me that you're taking a really hard line position that sort of cannot be done. And I started by letting you know I've done it. I think it is possible. But more importantly, to Judge Hurwitz's point, I don't think you need to take this position or we need... Oh, I don't think we need to answer that question to solve this case, do we? No, and Schwarter certainly did not have to answer that question either. Schwarter said that there are instances when state law might matter. And in that case, there was an issue as to whether the claims by children of the decedent qualified as the same claims that were... Well, it's not just that state law might matter. It was controlling. They were trying to figure out whether under... Was it California law? Yes. Whether that claim existed by the decedent surviving children. So state law was critical. That's what the Federal Tort Claims Act does, right? It puts the federal government in the same shoes as...  Right, so it matters a lot. Can you help us tease out the part of this that is controlled by federal law and the part that's controlled by state law? I think Judge Hurwitz and I are both struggling with that. The part that is controlled by federal law is, of course, the face of the statute, which says that if there was a settlement of a claim, then that would bar future claims. Where state law... Can I just stop you? I think that's right. But doesn't that require that we figure out what the claim is? And isn't that a function of what the parties agreed to settle? Yes. And there is no question in this case that what the parties agreed to settle was the property damage claim. Right, so why can't he go forward and bring the other part of his claim? Because Section 2672 says that any claim by reason of the same subject matter is barred thereafter. Right, but by baking in the term the claim, you see, then I think you've got a problem. Because the first sentence says what the claim is. And in this particular offer, he's defined his claim as a property damage claim. So it gets to be pretty circular. The way that I read Section 2672 is that there does not have to be a match between the first claim settled and the second claim that is sought. So any claim means that the first claim settled could be a property damage claim. That means that any further claim, whether it's personal injury or for anything else, is forever barred. The problem is that rolls you right back to the argument that I think you wisely tiptoed away from a minute ago. And that's the contention that this necessarily has to be. You cannot split claims under the Federal Tort Claims Act. But I want to make sure that Judge Hurwitz has a chance to follow up. Yeah, now, so let me ask that question slightly differently. Let's assume that all we had here in the letter from the U.S. Postal Service was the first paragraph. Would this be a different case? If we're looking at common law contract law, I think it might be a different case, because... So it seems to me that the critical point here is that we have a second paragraph. And that paragraph, I don't think your colleague, your friend is saying, doesn't provide for, on its face, for a total release. He just says you need to account for a total release. Read it in context. So it seems to me the critical point here is we do have that second paragraph. And we're trying to figure out what the effect of that second paragraph is. Well, the second paragraph is a very close paraphrase of Section 2672. And it clearly says that any further claims are barred. Certainly, that second paragraph wouldn't be talking about another property damage claim. The bicycle was the only property damage claim. So it has to cover something else. And what else would it cover but the personal injury claim or anything else besides property? I don't think that's right. So the first paragraph tells us what's being settled, right? Property damage claim. But can you read the second paragraph as who is being released? Acceptance of this check operates as a complete and release and bars recovery against the United States, the United States Post Office, and any employees whose acts give rise to the claim. Why can't it be read that way? I'm sorry, Judge Kress. Can I just turn to that paragraph again? Sure, sure, sure. I'm just positing to play devil's advocate here. The first paragraph says we're settling a property damage claim. Yes. For $675. Yes. So in answer to Judge Hurwitz's question, you said that this second paragraph can only be read and you said to refer to some other claim. It seems to me it can be read to be to be identifying who's being released. Acceptance of this check operates as a complete release of those three entities I just mentioned. Why is that wrong? The United States, the United States Postal Service, and any government employee whose acts gave rise to the claim. That begs the question of what is the claim? Why can't that, why can't it be read that way? The, the, the prepositional phrase by reason of the same subject matter modifies any additional or future claims. So there are three things that are modifying any additional or future claims. I think that's right. I think the question is which, what modifies what in this last sentence? So could you slow down and tell me how you read it? Is it, you're, you're, you're looking at the last, by reason of the same subject matter, you think that phrase modifies everything that comes before it? It modifies any additional or future claims against, and then against the United States, the United States Postal Service, and any, and or government employees, those also modify any additional or future claims. All those phrases modify any additional or future claims. Can I ask a question that you may not be able to answer? This seems unfair in a sort of a global sense. Nobody really thinks that Kapoor meant to settle all of his claims. Somebody screwed up. I'm not blaming anybody at the moment. Uh, is there some way to fix it? The, the letter responding to the, um, the personal injury claim expressed regret. That's at ER 41. Um, and that letter also explained that the Postal Service was bound by federal statutes, which restrict its authority. And so what we have to balance against fairness for an individual claimant is the executive branches. Of course, I'll- No, that's not what I'm asking. I'm assuming for a moment that you, you did what the statute requires. Is there the equivalent of a motion to reopen or rule 60 motion or something that the other side might be able to take advantage of? Um, I'm not aware of anything. Um, the Postal Service receives tens of thousands of personal injury claims every year. And what my agency clients told me when we were talking about this is that if the Postal Service were to have to go back and redo things like this all the time, it would actually be worse for all claimants because there wouldn't be enough resources to go around to as quickly process claims. So- But, but, but look at it this way. Um, I think it's right, I haven't heard you correct me, that there's no question about or dispute about what plaintiff offered. So really, the Postal Service is treating this, uh, response as a counteroffer. Yes. Right. But it doesn't say that. Is it, would it be so burdensome for the Postal Service to have said in response to your offer, here's a counterproposal? So it would be clear to everyone that this is a counterproposal? I think it's, um- Because your client's position is going to be if he signs the check, it's done. Right. But it's, how, how would he have known that? Excuse me, Judge Desai, please go right ahead. I didn't mean to talk over you. No, that's okay. Well, this, this claimant was represented by counsel. Lawyers are here to interpret language, um- We're looking at, we're staring at this thing with a microscope trying to figure out what would he, what would tell him this is a counteroffer? We're lawyers too. I am not seasoned myself in contract negotiations, but I will say that I'm, I'm aware of no authority that requires a counteroffer to expressly say this is a counteroffer. I interrupted Judge Desai. That's okay. I, I'm trying to understand what your position is with respect to the hypothetical situation. If Mr. Kapua had, in fact, responded much like the individual in the Macy case from the Third Circuit, what would your argument be? So in this case, if there had been a statement that accompanied the cashing of the check, that, you know, thank you for this check, I'm cashing it for the purpose of my property damage claim, and we'll get back to you at some future time with my personal injury claim, much like he said at the very beginning, what would the agency's position be? In that situation, our position would be that that would not have effect under Section 2672. That's right. So your position, it doesn't really matter whether or not you indicated in some way that this is a counteroffer, because your position would be that the moment that the check was cashed, that would trigger the complete release. Yes, we believe the statute is clear. I've also argued that even if we use the state law method that the Third Circuit used, that there's still a factual distinction. But yes, Judge Desai, that is correct. Anything further, counsel? Nothing further. Before you go away, let me make sure. Judge Hurwitz, do you have any further questions? No. Thank you. Thank you. Thank you. So the Macy case said that cashing a check by itself is not enough. We need something more. We need an agreement between the parties. In that case, the SF-95 was signed. The claim, it said, I agree that this language kills my claim. We did not do that. We said we have this property damage claim and we're pursuing the injury claim later. Nothing else was required of us. If we required more, we could get into a huge back and forth between the post office and the claimant saying, yes, I did, no, I didn't. It applies. It doesn't apply. So we have to, if the intent is clear from the claimant's letter, there is the and. The post office agrees with that by their own language, saying, yes, we're paying you for your property damage. The personal injury claim is preserved. It's important that we told the post office that the personal injury claim was coming. In these cases where the claimants have been cut off, they did not tell the post office that a personal injury claim was coming. They said either N-A, they wrote in the SF-95, or they described an injury but did not say, oh, by the way, we're going to come after you. So we did all that. We limited the scope of the agreement. The post office agreed with that. And we put them on notice that the injury claim was coming. And that is enough to have a meeting of the minds to form a contract in this situation. So unless you have questions. Any further questions? I don't think there are further questions. Thank you both. Thank you very much. We'll take.
judges: CHRISTEN, HURWITZ, DESAI